**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL MARTIN, | |
| Plaintiff, | No. 1:19-cv-6463 |
| vs. | Hon. Robert M. Dow, Jr. |
| CAREERBUILDER, LLC, *et al.*, | |
| Defendants. | |

**DEFENDANT CAREERBUILDER, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

Fiduciaries of retirement plans have become popular targets in class action lawsuits under ERISA, the Employee Retirement Income Security Act. Plaintiffs in these cases typically allege that plan fiduciaries violated their duty of prudence by offering 401(k) plan participants a menu of investment options that cost too much, underperform, or both. In a complaint long on conclusions but short on relevant facts, Plaintiff follows this template and alleges that CareerBuilder, LLC and other unidentified "Doe" defendants offered imprudent funds in the CareerBuilder, LLC 401(k) Plan (the "Plan").

Some claims of this sort have overcome the challenge of a Rule 12(b)(6) motion by including enough facts to make the claims plausible—for example, by alleging that the plan fiduciary caused the payment of "kickbacks" to service providers. Other claims, like those asserted in *Hecker v. Deere & Co.*, 556 F.3d 575, *reh'g denied*, 569 F.3d 708 (7th Cir. 2009), and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), have not passed that test because they alleged little more than that the investment options were too expensive or, with the benefit of

hindsight, performed poorly. As explained below, the complaint in this case falls into the latter category: It is entirely too conclusory, with too few well-pleaded facts, to proceed past the pleadings stage.

### Factual Allegations

To help employees save for retirement, CareerBuilder sponsors a defined contribution plan, commonly referred to as a 401(k) plan. Compl. ¶¶ 24–25. Employees' individual benefits are funded by a combination of their own contributions and matching contributions from CareerBuilder. *Id*. ¶ 29. As of the end of 2017, the Plan included 2,685 participants with total assets exceeding $180 million. *Id*. ¶ 30.

This case challenges the prudence of the menu of investment options Plan participants could choose from when deciding how to invest their money. Plaintiff alleges that CareerBuilder and other fiduciaries were responsible for assembling that menu, *id*. ¶ 27, but that they chose options that were more expensive than other available options in order to pay the fees of service providers to the Plan, *id*. ¶ 2. One such provider was Morgan Stanley, which among other things advised Plan fiduciaries on which options to include on the menu. *Id*. Another service provider, ADP (later replaced by another company called Empower), provided recordkeeping and other administrative services that are essential to the operation of a 401(k) plan. *Id*. ¶¶ 2, 32.

At the heart of Plaintiff's claim is that CareerBuilder allegedly allowed a practice known as "revenue sharing" to yield "excessive" payments to these service providers. *Id.* ¶ 38. As the Seventh Circuit has explained, revenue sharing is "an arrangement allowing mutual funds to share a portion of the fees that they collect from investors with entities that provide services to the mutual funds, the investors, or both." *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d

905, 907–08 (7th Cir. 2013). Plaintiff admits that "[r]evenue sharing is not in and of itself a breach of a fiduciary duty," but alleges that "excessive revenue sharing is." Compl. ¶ 72.

Plaintiff alleges that revenue sharing and other forms of payment added up to a per-participant annual cost to Plan participants of between $131 and $222 at different points during the class period, *id.* ¶ 64, when the "acceptable" amount was "no more than $40," *id.* ¶ 70. He provides no basis for his $40 figure. Plaintiff also asserts that the Plan included costlier classes of investment options when cheaper but otherwise identical versions were available, *id.* ¶¶ 78–79; that Plan fiduciaries could have jettisoned the entire menu of investment options, including any "actively managed" mutual funds, and moved Plan money from those funds to various "lower cost alternatives," Compl. ¶¶ 88–89; and that, more specifically, Plan fiduciaries should have swapped the Plan's actively managed funds for passive index funds, *id.* ¶¶ 90–93.

<u>Argument</u>

## I.    Legal Standard

A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and these facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). Plaintiffs may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are "merely consistent" with unlawful conduct, but are also consistent with lawful conduct, are insufficient. *Id*.

As the Supreme Court has observed, Rule 12(b)(6) is an "important mechanism for weeding out meritless claims," including in ERISA cases. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). In a suit claiming breach of fiduciary duty, as this one does, the prospect of discovery can be "ominous" and can increase the likelihood that a plaintiff with a

groundless claim will "simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

**II.**   **Plaintiff's claim for breach of the duty of prudence fails because his allegations of "excessive" fees, whether paid through "revenue sharing" or otherwise, are conclusory.**

To plead a plausible claim for breach of the duty of prudence, Plaintiff must plead facts showing that CareerBuilder failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). This is a process-based claim; it focuses on "a fiduciary's conduct in arriving at an investment decision, not on its results," and asks "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 434 (3d Cir. 1996). Yet Plaintiff admits in his complaint that he "lacks knowledge of Defendants' fiduciary selection process." Compl. ¶ 74.

In fairness, the absence of allegations about what CareerBuilder actually did is not necessarily fatal to Plaintiff's claim. Would-be plaintiffs may not know what happens behind fiduciaries' closed doors, so courts have allowed them to overcome a motion to dismiss if they allege facts that allow the Court to infer that the decision-making process was flawed. *See, e.g., Pension Benefit*, 712 F.3d at 718. For instance, in a case involving the sale of a private company's stock to an employee stock ownership plan where the sale was financed by a loan from the company's owners, the Seventh Circuit allowed plaintiffs to proceed where they alleged not just that the stock price was inflated, but also that "the stock value dropped dramatically after the sale (implying that the sale price was inflated), that the loan came from the employer-seller rather than from an outside entity (indicating that outside funding was not available), and that the

4

interest rate was uncommonly high (implying that the sale was risky, or that the shareholders executed the deal in order to siphon money from the Plan to themselves)." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

In the context of "excessive fee" cases like this one, however, the Seventh Circuit has been steadfast: Merely alleging that investment options' fees were "too high" (or investment returns "too low") does not pass muster. In *Hecker*, for example, the plaintiffs alleged that the investment options on the 401(k) plan's menu came with "excessive fees and costs." 556 F.3d at 578. The Seventh Circuit upheld the dismissal of that claim, finding the availability of cheaper funds to be "beside the point." *Id.* at 586. The court observed that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Id*.

The Seventh Circuit also cited the "range of expense ratios among the twenty Fidelity mutual funds" as evidence that the plan "offered a sufficient mix of investments for their participants." *Id*. The same is true here: According to Plaintiff, the CareerBuilder Plan offered funds with fees ranging from as few as 4 to just over 100 basis points,[1] Compl. ¶¶ 79, 88, which is consistent with the range upheld in *Hecker*, 556 F.3d at 586. *Hecker*, moreover, involved a much larger 401(k) plan, with more than $2 billion in assets, that enjoyed more bargaining power than the CareerBuilder Plan; the CareerBuilder Plan has less than a tenth the assets of the *Hecker* plan. *See* 556 F.3d at 579; Compl. ¶ 30 (alleging that CareerBuilder Plan had $180 million in assets).

---

[1] A basis point is one one-hundredth of a percent. In other words, 100 basis points is equal to 1 percent. The fees in mutual funds are expressed as "expense ratios," a percentage of assets that can be expressed in either basis points or as a percentage.

The Seventh Circuit applied these principles in *Loomis v. Exelon Corp.* and again upheld the dismissal of a complaint alleging "excessive" fees in a 401(k) plan—fees that were, as in *Hecker*, roughly the same as the range involved here. 658 F.3d 667, 673–74 (7th Cir. 2011). The plan in *Loomis*, like the plan in *Hecker*, was far larger than CareerBuilder's and so had more bargaining power. 658 F.3d at 672 (noting that plan had more than $1 billion in assets). The Seventh Circuit characterized plaintiffs' second-guessing of fiduciaries' decisions as "paternalistic" and observed that nothing in ERISA forbids fiduciaries from offering "high-expense, high-risk, and potentially high-return funds." *Id.* at 673. *Accord Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *White v. Chevron Corp.*, No. 16-cv-793, 2017 WL 2352137, at *3 (N.D. Cal. May 31, 2017) (dismissing plaintiffs' claim that "the value of their 401(k) retirement accounts—and those of other Plan participants—would have been significantly higher had defendants acted more prudently and chosen funds with higher returns or lower administrative fees and management fees (or both)"), *aff'd*, 752 Fed. App'x 453 (9th Cir. 2018).

Against this legal backdrop, Plaintiff's claims are implausible. His theory of fiduciary breach boils down to two alleged facts: (1) the availability of less expensive funds and (2) the availability of better performing funds. Compl. ¶¶ 77–80. On the first point, the Complaint identifies eleven funds on the Plan menu and compares them to share classes of the same funds with lower fees (and less revenue sharing available to pay service providers). *See id.* ¶¶ 79–80. According to the Complaint, the decision not to select these cheaper share classes "constitutes a violation of Defendants' fiduciary obligations to the Plan." *Id.* ¶ 84. This begs the question of how the service providers would be paid without the higher level of revenue sharing that goes along with higher-cost share classes. *Loomis* confirmed that plan sponsors, which may already be making substantial matching contributions to the plan, have no obligation to absorb that cost,

since "ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants." 667 F.3d at 671. And "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach." *White*, 2017 WL 2352137, at \*14.

Plaintiff fares no better when he asserts that CareerBuilder should have offered an entirely different set of investment options, each of which, he claims (with the benefit of hindsight) performed better than the funds on the Plan's menu. Compl. ¶ 88. The precise basis for this second-guessing is not entirely clear, but it appears to revolve around the idea that the Plan should have offered fewer actively managed funds and more index funds. The Seventh Circuit made short work of this theory in *Loomis*, finding a challenge to actively managed funds insufficient to survive a motion to dismiss, and more recently this Court determined that "the mere fact that plaintiffs believe index funds are a better long-term investment . . . does not a fiduciary breach make." *Divane v. Northwestern University*, No. 16 C 8157, 2018 WL 2388118, at \*6 (N.D. Ill. May 25, 2018), *appeal pending*, No. 18-2569 (7th Cir.).

Plaintiff further alleges that CareerBuilder imprudently kept funds on its menu in spite of their "lower performance." Compl. ¶ 88. Around nine funds have remained on the menu "for five consecutive years without any change," he alleges, which in Plaintiff's view suggests a "lack of any prudent process for monitoring these funds." *Id*. ¶ 101. This is a nonsequitur. The mere fact that a fund does not perform as well as another option "does not give rise to the inference that Defendants' decision to retain that investment offering was imprudent." *Patterson v. Morgan Stanley*, No. 16-CV-6568, 2019 WL 4934834, at \*11 (S.D.N.Y. Oct. 7, 2019); *see also DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990) ("the ultimate

outcome of an investment is not proof of imprudence," as ERISA "requires prudence, not prescience").

Nor does the presence of a supposed motive for preferring higher-fee options—namely, the need to pay third-party professionals like Morgan Stanley and ADP—affect the outcome. For one thing, these allegations are inextricably linked with the conclusory assertion that fees and costs were "excessive and unreasonable." Compl. ¶ 36; *see also id.* ¶ 40. Plaintiff alleges that an "acceptable" level of compensation for these professionals would have been $40 per participant per year, *id.* ¶ 70, but this is an *ipse dixit*, not a factual allegation. Like other conclusions, it is entitled to no presumption of truth. *Iqbal*, 556 U.S. at 678; *Divane*, 2018 WL 2388118, at *7–8 (rejecting similar conclusory assertion about "reasonable" level of fees). It cannot justify plenary discovery.

## III. Plaintiff's claim for breach of the duty of loyalty should be dismissed as implausible.

To state a claim for breach of the duty of loyalty, Plaintiff must offer well-pleaded factual allegations plausibly showing that CareerBuilder failed to act "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Plaintiff cites this standard but pleads no facts to support it, and it is hard to tell if he is really asserting a "loyalty" claim. If he is, it should be dismissed.

For starters, Plaintiff's objection appears to be that the Plan fiduciaries "caused the amounts that the Plan pays for services to be assessed against Plan participants' accounts." Compl. ¶ 41; *see also id.* ¶¶ 72, 85. As explained above, passing the costs of plan administration to participants is both common and lawful. *See Loomis*, 658 F.3d at 671 ("whether to cover these expenses is a question of plan design, not of administration"); *Hecker*, 556 F.3d at 585 (agreeing

that revenue sharing with service providers "violates no statute or regulation"). A breach of loyalty claim requires allegations suggesting some measure of self-dealing or improperly benefitting a third party. *See*, *e.g.*, *White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016). Plaintiff has alleged nothing like that here.

Plaintiff alleges that CareerBuilder established fee arrangements that were meant "to continue to retain the services of ADP and/or Morgan Stanley." Compl. ¶ 72. To quote *Hecker*: "But what if it did?" 556 F.3d at 583. Retirement plans need services of professionals like those at those firms, and ERISA's duty of loyalty expressly contemplates the payment of the Plan's "reasonable expenses." 29 U.S.C. § 1104(a)(1)(A). The Plan fiduciaries may have, upon prudent investigation, determined that ADP and Morgan Stanley were the most able Plan recordkeepers and advisors, respectively. Or perhaps the Plan fiduciaries determined that the disruption of changing recordkeepers and administrators would, on the whole, be detrimental to the Plan. Allegations "as consistent with lawful conduct as they are with unlawful conduct are not sufficient." *Divane*, 2018 WL 2388118, at *4 (citing *Twombly*, 550 U.S. at 570).

## Conclusion

Plaintiff has failed to offer factual allegations, as opposed to conclusions, that plausibly suggest that CareerBuilder breached any duty under ERISA. Accordingly, the Complaint should be dismissed.

Respectfully submitted,

By: */s/ Eric S. Mattson*

Eric S. Mattson
emattson@sidley.com
Nicole A. Heise
nheise@sidley.com
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603

Telephone: (312) 853-7000

*Attorneys for CareerBuilder, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 3, 2019, I electronically filed a copy of the foregoing Defendant CareerBuilder, LLC's Memorandum in Support of Motion to Dismiss through the Court's CM/ECF System, which will send notifications of the filing to all counsel of record.

*/s/ Nicole A. Heise*